# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

--------------------

m 99-21087
Summary Calendar

--------------------

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

DELBERT LEE GUERRERO,

Defendant-Appellant.

--------------------

Appeal from the United States District Court
for the Southern District of Texas

--------------------

November 22, 2000

Before SMITH, BENAVIDES, and
DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Delbert Guerrero appeals his conviction of knowingly making a false statement in connection with the attempted acquisition of a firearm. Finding no reversible error, we affirm.

## I.

Guerrero was under felony indictment when he walked into a store, completed an ATF Form 5300.35 (ATF form)[1] with false information, and handed it to Amelia Bado, who did business as a federally licensed firearms dealer. He was soon to be under indictment again, this time for violating 18 U.S.C. § 922(a)(6), which declares it unlawful

for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a

--------------------

[1] This is otherwise known as a "Brady form" or a "statement of intent to obtain a handgun(s)."

licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under this chapter[.]

Because the indictment did not allege that the statement was *intended to* deceive the firearms dealer, the government was bound to prove that the statement was *likely to* deceive the dealer.[2] To the satisfaction of the jury, the government did so.

## II.
### A.

Guerrero stipulated all but two of the facts necessary for conviction, agreeing that Bado was a federally licenced firearms dealer; that Guerrero completed and signed ATF Form 5300.35, in which he indicated that he was not under indictment or information for a felony; that he signed a receipt and tendered $10 to the store as part of completing and submitting the ATF Form 5300.35; and that he knowingly

---

[2] *See United States v. Adams*, 778 F.2d 1117, 1124-25 (5th Cir. 1985) (holding that because the § 922(a)(6) indictment charged that the defendant misrepresented his name, it was reversible error for the court to allow evidence of, and charge the jury on, the defendant's misrepresentations as to his address); *see also United States v. Robles-Vertiz*, 155 F.3d 725, 728 (5th Cir. 1998) (reasoning that "the government may not obtain an indictment alleging certain material elements or facts of the crime, then seek a conviction on the basis of a different set of elements or facts.").

answered falsely about not being under a felony indictment. These stipulations allowed the court and jury to focus on the two issues Guerrero raises on appeal.

First, he challenges the sufficiency of the evidence as to whether his admittedly false statement was likely to deceive, given Bado's pattern of abiding by the Brady Act. Second, he argues that the evidence was insufficient to prove that he "attempted" to buy a firearm from the dealer and that, at best, it demonstrated that he took only preliminary steps toward a purchase. Essentially, Guerrero insists that § 922(a)(6) is an "attempt" crime, requiring the government to prove that he intended to buy a gun and that he took a "substantial step," beyond mere preparation, toward buying it. *See United States v. Mandujano,* 499 F.2d 370, 376 (5th Cir. 1974).

### B.

When considering these challenges, which originated in Guerrero's motion for judgment of acquittal, we apply a *de novo* standard of review. *See United States v. de Leon*, 170 F.3d 494, 496 (5th Cir.), *cert. denied*, 120 S. Ct. 156 (1999). We review the sufficiency of the evidence by examining all the evidence in the light most favorable to the verdict. *See United States v. Thomas,* 120 F.3d 564, 569 (5th Cir. 1997). We will affirm if the evidence is such that a rational trier of fact could have found the requisite elements of the offense beyond a reasonable doubt. *Id.*

### III.

Guerrero argues that the statement on the form was not likely to deceive the dealer, because the dealer was certain to abide by the Brady Act and complete the required background check. The fact that the Brady

Act requires a dealer to check a potential gun buyer's criminal history, however, does not exonerate one who intentionally misstates his criminal background. The Brady Act is better understood as a backstop to catch errors or false statements, rather than a safety net for those who make false statements on a federal firearms form but want to do so in a manner that does not violate § 922(a)(6).

Guerrero also contends that we should append a duration requirement to the deception and hold that the deception must last beyond completion of the Brady check. The record shows that Guerrero immediately deceived Bado, who processed the form and accepted the $10 deposit for a firearm and would not have done so if Guerrero had indicated his real criminal status.

Guerrero's argument then becomes that he is not liable for vain deceit. The fact that a lie may not have been *ultimately* successful, however, does not negate the criminal act. There is sufficient evidence to support the verdict, which is not an affront to the language of the statute: Evidence of immediate, even if temporary, deception supports a conviction under a statute that looks for whether a statement is "likely to deceive."

## IV.

Although this court has not opined on whether § 922(a)(6) can be treated as an attempt crime once a material, false statement has been made, the treatment of this question in *United States v. Brozyna*, 571 F.2d 742 (2d Cir. 1978), is persuasive. There, the court overturned the dismissal of a § 922(a)(6) count for failure of the government to prove "attempted acquisition" after it had charged "acquisition." *See id*. at 745. The court first noted that § 922(a)(6) does not create two separate crimesSSone in connection with the acquisition and the other in connection with the attempted acquisition of a firearm. *Id.* The court continued:

The [district] court appears to have been led into error by the language of the statute itself: the phrase "in connection with the acquisition or attempted acquisition of any firearm" invites analysis in terms of the law of attempt. This invitation is delusory. The statute creates a single offense, the gravamen of which is the use of deceit in order to obtain a firearm. As the Supreme Court explained in *Huddleston v. United States*, 415 U.S. 814, 824-25 . . . (1974),

Section 922(a)(6) . . . was enacted as a means of providing adequate and truthful information about firearms transactions. Information drawn from records kept by dealers was a prime guarantee of the Act's effectiveness in keeping "these lethal weapons out of the hands of criminals, drug addicts, mentally disordered persons, juveniles, and other persons whose possession of them is too high a price in danger to us all to allow." 114 Cong. Rec. 13219 (1968) (remarks of Sen. Tydings). Thus, any false statement with respect to the eligibility of a person to obtain a firearm from a licensed dealer was made subject to a criminal penalty.

The phrase "in connection with the acquisition or attempted acquisition of any firearm" does not suggest an intent on the part of Congress to create separate offenses. Rather, it indicates that Congress deemed it to be immaterial whether the firearm was ultimately acquired. The legislative history contains no discussion of the meaning of

3

the term "acquisition," id. at 826 . . ., but it is apparent that Congress decided to add "attempted acquisition" in order to close a potential loophole that might otherwise have been available to defendants such as Brozyna. Congress used both "acquisition" and "attempted acquisition" in order to treat them alike, not differently. This construction of the statute is bolstered by an examination of [§] 924(a), which provides the penalty for violations of the deceit provisions of the Act. That section does not distinguish between, or even mention, cases where the weapon is acquired and those in which it is not; the penalty is the same in either situation . . . . [T]he trial court's instruction that the government needn't prove "that she actually acquired or came into possession of the firearm" was consistent with the statute, and the jury's guilty verdict was likewise consistent with the charge and with the proof offered at trial.

*Id.*

This analysis is persuasive.[3] The district court properly denied the motion for acquittal and entered a judgment of conviction.

AFFIRMED.

---

[3] *See also United States v. Gardner*, 605 F.2d 1076, 1077 (8th Cir. 1979) ("The offense is committed whether or not a firearm is acquired.")